# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

A RAY HOSPITALITY, LLC d/b/a
M.L. Rose - Sylvan Park,

       Plaintiff,

v.

SOCIETY INSURANCE, A MUTUAL COMPANY
c/o Registered Agent: William Bunzel,
150 Camelot Drive
Fond Du Lac, Wisconsin 54935,

       Defendant.

Hon. _____

Civil Action No. _____

## INITIAL COMPLAINT AND JURY DEMAND

Plaintiff A Ray Hospitality LLC operates a Tavern/Restaurant called M.L. Rose located at 4408 Charlotte Ave., Nashville, Tennessee 37209 ("A Ray" or "Plaintiff") brings this action against Society Insurance, A Mutual Company ("Defendant" or "Society") and alleges as follows:

## INTRODUCTION

1.      This action arises out of Defendant's improper failure to provide insurance coverage for the losses sustained and expenses incurred by Plaintiff because of the ongoing Coronavirus (Covid-19) pandemic.

2.      Plaintiff is an owner and operator of a tavern/restaurant in Nashville, Tennessee whose ordinary business operations have been interrupted – through no fault of their own – by the spread of the novel Covid-19 and recent orders issued by the State of Tennessee as part of the State's efforts to slow the spread of Covid-19 global pandemic. These interruptions present an existential

1

threat to these small, local businesses that employ hundreds and even thousands of Tennessee residents. To slow the spread and "flatten the curve" of the Covid-19 pandemic, the State of Tennessee and other governmental authorities mandated the closure of Plaintiff's business and hundreds or thousands of other restaurants across the city. As a result Plaintiff has been forced to cease regular operations, resulting in substantial lost revenues and continuing hardship for both Plaintiff and its employees. Plaintiff suffered a loss of business income.

3.     To protect its business in the event that Plaintiff suddenly had to suspend operations for reasons outside of its control, Plaintiff purchased and paid significant premiums for business interruption insurance from Society. Despite collecting premiums for such risks from Plaintiff, Society blatantly breach insurance obligations. Society Insurance has publicly denied claims arising from Covid-19 and the accompanying State-ordered interruption of their businesses, including Plaintiff's claims. In many situations, Society Insurance denied the claims prior to conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under state law. In fact, on March 16, 2020, before Plaintiff had noticed their claim, the CEO of Society Insurance circulated a memorandum to its "agency partners," acknowledging that states, such as Tennessee, had "taken steps to limit operations of certain businesses," but prospectively concluding that Society Insurance's policies would likely not provide coverage for losses due to a "governmental imposed shutdown due to Covid-19 (coronavirus)." (A copy of this memorandum is attached here as "**Exhibit A**.")

4.     The reasons cited by Society Insurance for denying Plaintiff's claims are baseless, false and amount to an outright misrepresentation of the contents of the Policy and the law of the State of Tennessee. Society Insurance's conclusory statement that the actual or alleged presence of a substance like Covid-19 does not result in "physical loss or damage" is contrary to the law in

2

Tennessee. Tennessee courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." The physical closing and/or inability of Plaintiff to open due to the Closure Orders also constitutes a physical loss so as to entitle it to coverage under the policy.

5. Making matters worse, on March 27, 2020, Society Insurance's Chief Executive Officer, Rick Parks, sent a memo to all Society Insurance policyholders entitled, "A Message From our CEO on Pandemic Crisis," which further proves Society Insurance made the decision to deny claims like Plaintiff's even before Plaintiff submitted a claim. (A copy of Society Insurance's March 27, 2020 memo is attached here as "**Exhibit B**.") In the memo, Parks knowingly misrepresented the coverages available under Society Insurance policies by citing pandemic event exclusions that do not exist in policies issued by Society Insurance. As Parks put it: "Insurance has always identified and excluded coverage for loss events that are so large, or are so unpredictable, that they outstrip the capacity of the industry to fund losses, or even price the exposure accurately. Exclusion for acts of war, nuclear incidents and flood are part of insurance policies for these reasons. ***These are the same reasons that coverages for pandemic events are excluded.***" (emphasis added). But there are no such exclusions for pandemic events in Society Insurance's policies.

6. Upon information and belief, Society Insurance sent this memo in furtherance of a corporate strategy designed to intentionally mislead Society Insurance's policyholders about the relevant coverage terms in their policies and discourage policyholders from filing claims for losses arising from Covid-19 business interruption orders.

7. Parks' March 27, 2020 memo also made clear that Society Insurance was not making coverage determinations based on the facts of the claim and the language of the policies that

3

Society Insurance issued, but rather, based upon the financial impact that the pandemic would have upon the insurance industry if Society Insurance covered losses as required by the language of its own policies. Park asserted in his memo: "The insurance industry combined does not have enough assets to fund these losses and still be able to meet past and future obligations."

8.      Society Insurance's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the policies it issued. These denials appear to be driven by Society Insurance's desire to limit its own financial exposure to the economic fallout resulting from the Covid-19 crisis, rather than to initiate, as Society Insurance is obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiff in exchange for valuable premiums.

9.      This lawsuit was filed because of Society Insurance's refusal to honor the insurance policy that it sold to Plaintiff, which owns and operates a restaurant/tavern in Nashville, Tennessee: M.L. Rose Craft Beer & Burger – Sylvan Park.  Society Insurance has failed to honor its obligations under commercial businessowners insurance policies issued to Plaintiff, which provide coverage for losses incurred due to a "necessary suspension" of their operations, including when their operations are forced to cease due to Covid-19 and Governmental Orders.

## PARTIES

10.     Plaintiff A Ray Hospitality, LLC's M.L. Rose Craft Beer & Burger Sylvan Park location at 4408 Charlotte Ave., Nashville, Tennessee 37209 (hereinafter "M.L. Rose" or "Plaintiff") is a domestic company with its principal office located at 408 38th Ave. N, Nashville, TN 37209, and

4

authorized to do business in the State of Tennessee.  M.L. Rose has a Businessowners Policy from Society Insurance, Policy No. BP16020832-3 ("Policy").

11.     Defendant Society Insurance is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Tennessee and elsewhere. Society Insurance is incorporated in the State of Wisconsin and maintains its principal place of business in 150 Camelot Drive, Fond du Lac, Wisconsin  Its registered agent is William Bunzel, whose office is located at 150 Camelot Drive, Fond du Lac, Wisconsin 54935.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendants because they are qualified and authorized to do business in Tennessee through the office of the Commissioner of the Tennessee Department of Commerce and Insurance. As such, they have therefore appointed the Commissioner, the Commissioner's Chief Deputy or their successors its true and lawful attorneys upon either of whom all lawful process in any action or legal proceeding against them pursuant to T.C.A. § 56-2-103. In addition, this Court has personal jurisdiction over Defendants because Defendants have submitted to jurisdiction in this state by: (a) transacting business in Tennessee; (b) contracted to ensure the Plaintiff located within Tennessee at the time of contracting; and (c) entering into a contract substantially connected within Tennessee.

14.     This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority event detailed below.

5

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiff's claims occurred within the Middle District of Tennessee.

## **FACTUAL ALLEGATIONS**

16.     Plaintiff repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count as if set forth herein, in its entirety.

17.     Plaintiff, M.L. Rose is a popular local chain neighborhood bar that has been serving the Nashville, Tennessee community since 2008.  Since its opening and prior to the issuance of Tennessee's Covid-19 Closure Orders, Plaintiff employed both full and part time employees and was well-known to craft beers using a thoughtful, expansive and diverse menu.

18.     In exchange for Plaintiff's substantial premiums, Society Insurance sold commercial property insurance policies promising to indemnify the Plaintiff for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by a Closure Orders, during the relevant time period (each a "Policy" and collectively, the "Policies").  Plaintiff paid these substantial premiums to Society Insurance in exchange for insurance coverage as set forth in the insurance contract.

19.     At all times relevant hereto, M.L. Rose was an insured policyholder pursuant to an insurance contract bearing Policy No. BP16020832-3 issued by Society Insurance to Plaintiff (the "Policy") at their principal place of business in Tennessee. The Policy covered the period of November 8, 2019 to November 8, 2020. In this Policy Defendant agreed to indemnify Plaintiff for losses resulting from direct physical loss of or damage to covered property and the suspension of business at the Insured Premises caused by a covered cause of loss.  The Policy is attached hereto as **Exhibit C** and incorporated herein by reference.

6

20.     In order to financially protect against property damage and the interruption of business operations, Plaintiff purchase insurance coverage from Defendant. Defendant, in exchange for money in the form of premiums, sold Plaintiff the Policy and promised to protect Plaintiff from property damage and business interruption.

**B.      Actions and Orders of Civil Authorities**

21.     On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as Covid-19—constituted a global pandemic.

22.     Emerging research on the virus and recent reports from the CDC indicate that the Covid-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

23.     In response to Covid-19, federal, state and local authorities have mandated social distancing, limited gatherings, and mandated the closure of numerous businesses. Plaintiff is one of those businesses.

24.     As of August 20, 2020, the Centers for Disease Control and Prevention ("CDC") reports 5,506,929 Covid-19 cases in the United States and its territories.  The CDC reports 172,416 deaths are attributed to Covid-19 through the same date.

25.     The scientific community in the United States and internationally, including the World Health Organization, has recognized that the coronavirus is a cause of physical loss and damage. Numerous government entities have also recognized the coronavirus as a cause of physical loss and damage to property.

26.     On or about March 22, 2020, while the Policy was in full force and effect, Tennessee Governor Bill Lee issued Executive Order #17 which prohibited patrons from eating and drinking

7

at Tennessee restaurants in an effort to mitigate the impact and spread of COVID-19. ("E.O. #17" attached hereto as "**Exhibit D**"). On or about March 30, 2020, Governor Lee issued Executive Order #21 which extended the effective duration of Executive Order #17 to April 14, 2020. ("E.O. #21" attached hereto as "**Exhibit E**"). On April 13, 2020, Governor Lee issued Executive Order #27, which again extended the duration of Executive Order #17 to April 30, 2020. ("E.O. #27" attached hereto as "**Exhibit F**"). It is anticipated that additional Executive Orders will be entered as well, all of which are incorporated herein by reference when issued.

27.     On or around March 15, 2020, while the Policy was in full force and effect, pursuant to a Declaration of Public Health Emergency adopted by the Board of Health for Nashville and Davidson County, the Chief Medical Director for the Metro Public Health Department issued an Order that limited Plaintiff or other restaurants to "half the capacity specified" in its "food service establishment permit" effective March 17, 2020 and on March 20, 2020 that order was amended to prohibit Plaintiff from "allow[ing] customers to consume food or beverage on the premises until further notice," effective that same day. ("Metro Order", as amended, attached hereto as "**Exhibit G**").

28.     On or around March 22, 2020, and effective beginning March 23, 2020, while the Policy was in full force and effect, the Metro Health Department of Nashville/Davidson County issued a "Safer At Home Order" closing all dine-in restaurant operations in an effort to mitigate the impact of COVID-19, to bend the curve and to disrupt the spread of the virus, with the goal of saving lives and reducing strain on local healthcare resources ("Safer At Home Order"). The Safer At Home Order was in effect until April 24, 2020, subject to extension. (Safer At Home Order, as amended, attached hereto as "**Exhibit H**"). It is anticipated that the Metro Order and Safer At Home Orders will be extended, all of which extensions are incorporated herein by referenced when issued.

29.     On or about March 30, 2020, again while the Policy was in full force and effect, Tennessee Governor Bill Lee issued Executive Order #22 which ordered all Tennesseans to stay home unless otherwise engaged in an enumerated essential service/activity to avoid exposure to and the spread of COVID-19. ("E.O. #22" attached hereto as "**Exhibit E"**). E.O. #22 was also extended by E.O.#27 referenced above.

30.     Once Nashville ordered a phased re-opening, the most recent August 15, 2020 Declaration of Public Health Emergency adopted by the Board of Health for Nashville and Davidson County, the Chief Medical Director for the Metro Public Health Department issued an Order that limited Plaintiff or other restaurants to "half the capacity specified" in its "food service establishment permit". ("Order" attached hereto as "**Exhibit I"**).

31.     The continuous presence of the coronavirus on or around Plaintiff's premises has created a dangerous condition and rendered their premises unsafe and unfit for their intended use.

**C.     Plaintiff's Losses Due to the Coronavirus Pandemic and Closure Orders**

32.     The continuous presence of the coronavirus on or around Plaintiff's premises has created a dangerous condition and rendered their premises unsafe and unfit for their intended use.

33.     As a result of the unsafe and unfit premises caused by the dangerous condition, Covid-19, Plaintiff has complied with all applicable orders of Tennessee state and local authorities.

34.     The Closure Orders were made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises and extended the requirement that bars and restaurants in Tennessee.

35.     Plaintiff's compliance with those orders has caused direct physical loss of Plaintiff's insured property in that the property has been made useless and/or uninhabitable; and its functionality has been severely reduced.

9

36.     As a result of the Loss, the Insured Premises has suffered immediate and direct physical loss and/or damage, and Plaintiff has been forced to suspend its operations resulting in substantial business interruption and loss of business revenue. The covered losses incurred by Plaintiff and owed under the Policies is increasing every day. As a result of these catastrophic losses, Plaintiff has been forced to furlough their workers and may have to close their location permanently

37.     Plaintiff's neighboring businesses have also been impacted, as their properties' have sustained similar direct physical loss as a result of the Covid-19 Closure Orders.

38.     The Covid-19 losses incurred by Plaintiff and owed under the policy increase daily. Plaintiff will continue to experience continued loss of business income, because government officials, in issuing the Orders, have stated that densely occupied public spaces are dangerously unsafe, and continuing to operate its business in the same manner as before the emergence of Covid-19 could expose Plaintiff's employees and customers to transmission and infection risks.

39.     The policy does not include any applicable or enforceable exclusions that preclude coverage of Plaintiff's business interruption claims.

**D.     Society's Denial of Coverage**

40.     Following the Government's Orders, on March 18, 2020, Plaintiff reported a loss of business income to Society as promised under the Policies.

41.     The Policy was in full force and effect at the time of the Loss and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion and Defendant has not asserted or cited Plaintiff to any such applicable exclusion.

42.     The Policy does not only provide Plaintiff with coverage for direct physical loss or damage to its property at the Insured Premises, the Policy also provides coverage for, at a minimum:

10

a. The actual loss of "Business Income" sustained by Plaintiff" due to the "necessary suspension" of operations during the period of business interruption;

b. Necessary "Extra Expense" Plaintiff incurs during the period of interruption that it "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises;"

c. "Civil Authority" action which causes the loss of "Business Income" and "Extra Expense" due to the "action of civil authority that prohibits access" to the Insured Premises; and

d. "Business Income", "Extra Expense" and "costs to clean and sanitize your premises, machinery and equipment" if operations are suspended due to "contamination that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your products." "Contamination" means "a defect, deficiency, inadequacy or dangerous conditions in your products, merchandise, or premises."

43. "Suspension" is defined by the Policy to include "the partial slowdown or complete cessation of your business activities" or "that a part or all of the described premises is rendered untenantable if coverage for Business Income applies."

44. After the Loss and after reporting the Claim, Plaintiff was prepared to, and in fact did, fulfill all duties imposed upon it by the Policy and undertook reasonable and timely efforts to mitigate its damages.

45. After reporting the Loss to Defendant, Defendant did not contact Plaintiff to conduct any meaningful coverage investigation. In fact, Defendant refused and failed to conduct a reasonable investigation of Plaintiff's claim based on all available information reasonably available to Defendant.

46. Upon information and belief, on March 16, 2020, days before Plaintiff even made the

11

Claim for the Loss, Defendant had predetermined that the Claim would be denied. On that date, the CEO of the Defendant circulated a memorandum to its "agency partners," acknowledging that states like Tennessee had "taken steps to limit operations of certain businesses," and prospectively concluded the Defendant's policies would likely not provide coverage for losses due to a "governmental imposed shutdown due to Covid-19 (coronavirus)." (A copy of Mr. Rick Parks, CEO of Defendant, memorandum is attached as "**Exhibit A**").

47.     Society denied Plaintiff's claim for business interruption coverage.

48.     Unlike many commercial property policies, the Policy here does not contain an exclusion for losses resulting from a virus. Indeed, Plaintiff reasonably expected and relied upon the fact that the Policy it purchased from Defendant would provide coverage for property damage and business interruption caused by viruses such as Covid-19.

49.     If Defendant intended to exclude damages caused by global viral pandemics, it could have simply and expressly done so in the language of the Policy or by inserting an exclusion. Instead, after having collected significant premium dollars from Plaintiff and being faced with its desire to protect its own financial interest, Defendant now retreats to misinterpretation of the Policy and baseless conclusions to avoid its contractual obligations.

50.     Defendant asserts that there is no property damage caused by the presence of a dangerous virus. But, if viruses such as Covid-19 do not cause physical loss or damage to property there would be no reason for the entire insurance industry to develop, and include with a majority of commercial policies in this country, an exclusion entirely dedicated to excluding losses caused by viruses. Contamination by Covid-19 constitutes direct physical loss or damage, a term that is undefined by the Policy.

51.     Moreover, here, Defendant ignores the fact that the Policy it drafted provides Plaintiff

12

with coverage for losses due to governmental action "taken in response to dangerous physical conditions," even if those dangerous physical conditions "cause[] damages to property *other than* property at the described premises." (emphasis added). After all, the Governor shut down the entire state…because of the dangerous presence of, and infection by, Covid-19. The governor's Executive Orders not only shut down "surrounding" property but *all* property that is not an essential service to avoid exposure to and the spread of Covid-19. "Exposure to" and "spread of" Covid-19 necessarily means that the dangerous condition is actually present and causing damage to properties other that the Insured Premises.

52.     The continuous presence of Covid-19 on or around the Insured Premises has rendered the same unsafe and unfit for its intended use at this time.

53.     Despite the fact that Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter, Defendant has failed to fully and promptly pay Plaintiff's Claim for insurance proceeds.

54.     To date, Defendant has failed to fully and properly pay Plaintiff's Claim as required by the Policy.

55.     There is no reasonable coverage dispute or other justifiable reason for Defendant's failure to pay Plaintiff's Claim associated with the damage sustained.

56.     Defendant's failure to timely and fully pay Plaintiff the amount owed pursuant to the Policy is without justification.

57.     Defendant's failure to pay the money and benefits due and owing Plaintiff under the Policy has caused it to initiate this lawsuit to recover the insurance proceeds to which it is entitled.

58.     As a direct and proximate cause of Defendant's actions/inactions stated above and below,

Plaintiff has sustained substantial compensable losses, including all amounts due Plaintiff under the Policy and other such costs and expenses incurred as a result of Defendant's wrongful conduct.

**D.    Coverage Under the Policy**

59.    The Policy is an "all risk" property insurance policy in which Society agrees to provide coverage for all "Covered Causes of Loss" under the policy, not otherwise excepted from coverage by an applicable exclusion or limitation elsewhere.  Covid-19 is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States, infecting more than 8 million Americans as of the date of the filing of this lawsuit and impacting practically every citizen in our country. Covid-19 has been declared a pandemic by the World Health Organization.

60.    The Society Insurance Policies do not contain an exclusion for virus, coronavirus, Covid-19 or governmental actions occasioned thereby. The Policy does not contain any other exclusion that would prohibit coverage for the loss and damage sustained by Plaintiff.

**1.    Covered Causes of Loss:  All Risk Policy**

61.    Under the heading "Covered Causes of Loss," Society agreed to pay for "Direct Physical Loss" in the policy. Specifically, the Policy provides for the following coverage:

> **3.    Covered Causes Of Loss**
> Direct Physical Loss unless the loss is excluded or limited under this coverage form.[1]

For Society to prevail in this case, it must establish the presence of a valid exclusion to coverage in the Policy it issued to Plaintiff.  While other insurers include a variety of virus exclusions, the Policy issued to Plaintiff contains no such exclusion.  Because Defendant cannot prove the applicability of any exclusion to coverage and because no virus exclusion exists in the Policy that

---

[1] Policy, Businessowners Special Property Coverage Form, p. 2 of 32.

14

would limit of exclude coverage, Defendant must provide coverage for Plaintiff's loss, even after wrongfully denying Plaintiff's loss.

## 2. Covered Cause of Loss: Business Income

62.     In addition to property damage losses, Society Insurance also agreed to pay for the actual loss of "Business Income" sustained by Plaintiff "due to the necessary suspension" of Plaintiff's operations during the period of business interruption caused by "direct physical loss of or damage to covered property" at the insured's premises.[2] The Policy issued to Plaintiff specifically provides coverage for Business Income pursuant to the following terms:

**g.     Business Income**

(a)     We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises. With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i)     The portion of the building which you rent, lease or occupy;

(ii)     Any area within the building or at the described premises if that area services, or is used to gain access to, the portion of the building which you rent lease or occupy.

(b)     We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

(c) Business Income means the:

(i)     Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due

---

[2] Policy, Businessowners Special Property Coverage Form, p. 5 of 32.

> to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and
>
> (ii)    Continuing necessary operating expenses incurred.[3]

63.    With respect to business interruption losses, "suspension" means: (1) "the partial slowdown or complete cessation of your business activities"; or (2) "that a part or all of the described premises is rendered un-tenantable if coverage for Business Income applies."[4]  In this case, Plaintiff closed for business on March 6, 2020 consistent with the government's orders. Plaintiff reopened partially for business, with the following limitations:  (1) reduced capacity; (2) reduced staffing; (3) reduced menu options; and (4) significantly reduced business income.  From the date of closure to the present, Plaintiff has incurred a compensable business income loss under the policy while the property was subjected to both a "partial cessation and complete cessation" of business activities.

### 3.  Additional Coverage:  Extra Expense

64.    The Policy issued by Society Insurance also provides coverage for "Extra Expense" incurred by Plaintiff during the period that the Plaintiff's business is affected by a loss that Plaintiff "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises."[5] [Policy (p. 6 of 32 of the Businessowners Special Property Coverage Form)]

#### h.  Extra Expense

> (1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include

---

[3] *Id.*, pages 5-6.
[4] *Id.* page 5.
[5] *Id.* page 6.

the area within 100 feet of such premises. With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy;

(b) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i)    At the described premises; or

(ii)   At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i)    Repair or replace any property; or

(ii)   Research, replace or restore the lost information on damaged "valuable papers and records"

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the data of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

We will pay for Extra Expense only to the extent it reduces the amount of loss that otherwise would have been payable under Additional Coverage g. Business Income.[6]

---

[6] *Id.* at 6-7.

Plaintiff incurred significant losses that should have been compensated under the Extra Expense coverage provided by the Policy. Specifically, Plaintiff incurred the following expenses that should have been paid under the Policy's Extra Expense coverage: (1) cleanup expenses; (2) additional costs of complying with local, state and federal guidelines; (3) staff protection, including masks, gloves and additional PPE; (4) signage and instruction related to safe operating procedures (i.e. social distancing, PPE requirements, etc.); and (5) staff training and education.

### 4. Additional Coverage: Civil Authority

65.     The Policy also includes "Civil Authority" coverage, which is designed to compensate policyholders like Plaintiff when offsite damage precludes normal business operations. The Policy's Civil Authority provision states as follows in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surround the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within the area, and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage...[7]

Plaintiff is in Nashville, which ordered all taverns to be closed for a period of time and then later only reopened with reduced capacity and access.

66.     Since March 12, 2020, the Closure Orders have mandated that Plaintiff either close, or operate at a dramatically reduced capacity. Each one of the Closure Orders (as more fully addressed in preceding sections) was sufficient to trigger coverage under the Civil Authority

---

[7] *Id.* pages 7-8.

coverage provided by the Policy, but Defendant Society has nevertheless wrongfully denied coverage for Civil Authority. Covid-19 is, and continues to be, precisely the kind of "dangerous physical condition" the Policy provides coverage for and the Closure Orders are exactly the type of governmental actions taken in response to a dangerous condition that provides coverage for Plaintiff's losses.

**5. Contamination Coverage**

67.     In addition to providing coverage for all causes of "direct physical loss" unless otherwise excluded, the Society Insurance Policies also provide another source of coverage specifically for contamination. As provided by the Policies, when a business is suspended due to "contamination" that results in "an action by a public health or other governmental authority that prohibits access" to an insured location, coverage is also triggered and should have been extended to Plaintiff. Specifically, the Policies provide coverage for:

**m. Contamination**

If your "operations" are suspended due to "contamination":

(1) We will pay for your costs to clean and sanitize your premises, machinery and equipment, and expenses you incur to withdraw or recall products or merchandise from the market. We will not pay for the cost or value of the product. The most we will pay for any loss or damage under this Additional Coverage arising out of the sum of all such expenses occurring during each separate policy period is $5,000; and

(2) We will also pay for the actual loss of Business Income and Extra Expense you sustain caused by

(a) "Contamination" that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product.

(b) "Contamination threat"

(c) "Publicity" resulting from the discovery or suspicion of "contamination". Coverage for the actual loss of Business Income under this section will begin immediately upon the suspension of your business operations and will

19

continue for a period not to exceed a total of three consecutive weeks after coverage begins.

Coverage for necessary Extra Expense under this section will likewise begin immediately upon the suspension of your business operations and will continue only for a total of three consecutive weeks after coverage begins, or until the loss of Business Income coverage ends, whichever is longer. The coverages under this section may not be extended nor repeated. The definitions of Business Income and Extra Expense, contained in the Business Income and Extra Expense Additional Coverages section shall also apply to the additional coverages under this section.[8]

Covid-19 plainly meets the Policy's definition of contamination as a "dangerous condition" in the insured's "product, merchandise, or premises." The possibility of Covid-19 being spread from person to person in close proximity to one another and/or from commonly touched surfaces, constitutes a "dangerous condition".

68.    Contamination of the insured premises by Covid-19 would be a direct physical loss needing remediation to clean the surfaces of the establishment. The presence of any Covid-19 particles renders items of physical property unsafe and the premises unsafe.

69.    The presence of any Covid-19 particles on physical property impairs its value, usefulness and/or normal function. Specifically, in addition to the physical value, usefulness or normal function being impaired, the loss of use of the premises and the items within it also constitutes a physical loss to the extent that the premises and any business personal property cannot be used fully by Plaintiff.

70.    The presence of any Covid-19 particles causes direct physical harm, direct physical damage and direct physical loss to property.

71.    The presence of people infected with or carrying Covid-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

---

[8] *Id.* pages 8-9.

72.     The presence of people infected with or carrying Covid-19 particles at premises renders the premises, including property located at that premises unsafe, resulting in direct physical loss to the premises and property.

73.     The losses caused by Covid-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Contamination provisions of Defendant's policies.

74.     The Society Insurance policy does not exclude or limit coverage for losses due to viruses, pandemics, communicable diseases, or anything similar. Therefore, the all-risk policy purchased by Plaintiff obligates Society to cover Plaintiff's Covid-19 related losses.

## FIRST CLAIM FOR RELIEF - DECLARATORY JUDGMENT

75.     Plaintiff repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count as if set forth herein, in its entirety.

76.     Pursuant to 28 U.S.C. § 2201:

> (a) Plaintiff's losses incurred in connection with the novel coronavirus, the Business Interruption Orders and the and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

> (b) Society Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under Tennessee law; and

> (c) Society Insurance is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Business Interruption Orders during both the four-week indemnity

21

period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

77.     The Policy is an insurance contract under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy such as business losses incurred as a result of the Closure Orders forcing plaintiff to close and/or alter its business operations.

78.     Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

79.     Society Insurance has arbitrarily and without justification refused to reimburse Plaintiff for any losses incurred by Plaintiff in connection with the covered business losses related to novel coronavirus, the Business Interruption Orders, and the necessary interruption of their business stemming from the Covid-19 pandemic.

80.     An actual case or controversy exists between Plaintiff and Society as to the rights, duties, responsibilities and obligations of the parties under the Policy.  Society disputes and denies facts relating to coverage under the Policy, including (but not limited to) the following facts: (1) that a slowdown in business due to suspension of business in accordance with a Closure Orders is a direct physical loss, (2) that a civil authority has prohibited access to Plaintiff's business due to a covered cause of loss that caused damage to a premises other than the insured premises,  (3) that a government authority has prohibited access to the insured premises because of contamination, (4) that a government authority has prohibited access to the premises or suspended Plaintiff's business operations due to a defect, deficiency or dangerous condition on Plaintiff's premises, and (5) that coverage is due under the any of the terms and provisions of the Policy.  Society disputes that it is obligated under the Policy to reimburse Plaintiff for the full amount of Business Income losses

22

incurred (and to be incurred) in connection with the Closure Orders stemming from the Covid-19 pandemic.

81.    An actual case or controversy exists regarding Plaintiff's rights and Society Insurance's obligations under the Policies to reimburse Plaintiff for the full amount of losses incurred by Plaintiff in connection with Business Interruption Orders and the necessary interruption of their businesses stemming from the Covid-19 pandemic.

82.    Plaintiff seeks a Declaratory Judgment to determine and declare the following:

(a)    that Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of Plaintiff's business stemming from the Covid-19 pandemic are insured losses under the Policy.

(b)    Society Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under state law.

(b)    that Society Insurance is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders and the necessary interruption of Plaintiff's business stemming from the Covid-19 pandemic.

**SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT**

83.    Plaintiff repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count as if set forth herein, in its entirety.

84.    The Policy is a binding contract and is supported by valid consideration.

85.     Plaintiff purchased a comprehensive business insurance policy from Society Insurance. This policy was a valid, enforceable and binding contract that afforded Plaintiff comprehensive business insurance and property insurance under the terms and conditions of the Policy. Under this contract, Society was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the Closure Orders interrupting their ordinary business operations and the necessary interruption of their business stemming from the Covid-19 pandemic. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet Society Insurance has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

86.     Plaintiff met all or substantially all of its contractual obligations, including paying all of the premiums required by the Society Insurance.

87.     There are no applicable, enforceable exclusions in the Policy that would preclude coverage.

88.     Covid-19 and the Closure Orders have caused, and continue to cause physical loss and damage to Plaintiff's property and surrounding properties and are causing Plaintiff to incur business losses that are covered under the Policy. Defendant is in total, material breach of the Policy, and Defendant is liable to Plaintiff under the Policy for the Loss by denying coverage. Specifically, Defendant breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff as a result of the Loss as required by the terms of the Policy.

89.     As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to the

24

direct physical loss or damage to the buildings located on Insured Premises, loss of "Business Income", "Extra Expense", as well as consequential damages, plus interest thereon.

90.     Defendant is liable to Plaintiff for its losses.

91.     As a result of Society Insurance's breach of the Policy, Plaintiff has suffered damages for which Society Insurance is liable, in an amount to be established at trial.

92.     Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was clear; (2) refused and failed to conduct a reasonable investigation of Plaintiff's claim based on all available information; (3) unjustly refused to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) refused and failed to obtain all reasonably available information and generally ignored Plaintiff's claim; (5) failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies; (6) failed to treat Plaintiff's interests equal to that of its own; (7) failed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (9) misrepresented facts and/or provisions of the Policy relating to coverage of the Loss; (10) engaged in a premature and outcome determinative decision-making process engineered to result in the denial of Plaintiff's Claim even prior to Plaintiff making said Claim; and (11) engaged in such other acts toward Plaintiff that are contrary to the duties owed to Plaintiff as established by the customs and practices in the industry, the law, and the Policy. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless,

25

acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to fully compensate Plaintiff for its losses, and withheld monies and benefits rightfully due Plaintiff. In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interest and should be punished. Plaintiff seeks, and is entitled to, punitive damages.

## THIRD CLAIM – BAD FAITH

93. Plaintiff repeats and re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count as if set forth herein, in its entirety.

94. Defendant's refusal and failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

95. The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due and owing under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in the paragraphs above. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay, in full, Plaintiff's valid claim and withheld monies and benefits rightfully due to Plaintiff.

96.     Society Insurance and its agents have unreasonably and in bad faith breached the contract of insurance between the parties.

97.     Society Insurance and its agents have acted in an arbitrary and intentional manner and have refused to pay the proceeds rightfully due to Plaintiff. This unjustified refusal has no basis in fact or law and constitutes bad faith. The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due and owing under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in the paragraphs above. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay, in full, Plaintiff's valid claim and withheld monies and benefits rightfully due to Plaintiff.

98.     Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

  a.  Defendant's intentional failure to fully inform Plaintiff of its rights and obligations under the Policy;

  b.  Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when liability was reasonably clear;

  c.  Defendant's intentional refusal to pay Plaintiff's claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

  d.  Defendant's intentional refusal to fully investigate Plaintiff's claim and to

obtain all available information before alleging that it had no further obligations to Plaintiff;

e. Defendant's failure to promptly provide Plaintiff with a reasonably accurate explanation for its refusal to pay its claim in full;

f. Defendant's engaging in acts and practices toward Plaintiff that amounts to acts of baselessness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiff;

g. Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for its losses;

h. Defendant's intentional failure to pay all amounts due and owing to Plaintiff under the Policy with no reasonable or justifiable basis;

i. Defendant's systematic scheme designed to save money otherwise due and owing to Plaintiff and others similarly situated as a cost-saving mechanism; and

j. Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation.

99.    In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests and should be punished as authorized by statute.

100.    As a result of Society's bad faith, Plaintiff has sustained substantial compensatory damages for which Society Insurance is liable, in an amount to be established at trial.

WHEREFORE, Plaintiff demands judgment against the Society Insurance as follows:

1.    Enter a declaratory judgment on Count I of the Complaint in favor of Plaintiff and against Society Insurance, declaring as follows:

(a) Plaintiff's losses incurred in connection with the novel coronavirus, the

Business Interruption Orders and the necessary interruption of their businesses stemming from the Covid-19 pandemic are insured losses under the Policies;

(b) Society Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under state law; and

(c) Society Insurance is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders.

2.    Enter a judgment on Count II of the Complaint in favor of Plaintiff and against Society Insurance and award damages for breach of contract in an amount to be proven at trial;

3.    Enter a judgment on Count III of the Complaint in favor of Plaintiff and against Society Insurance for the statutory bad faith;

4.    Enter a judgment in favor of Plaintiff and against Society Insurance in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against Defendants, which amount to be established at the conclusion of this action;

5.    Award to Plaintiff and against Society Insurance prejudgment interest, to be calculated according to law, to compensate Plaintiff for the loss of use of funds caused by Society Insurance's wrongful refusal to pay Plaintiff for the full amount in costs incurred in connection with the Business Interruption Claims; and

6.    Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

29

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

      Respectfully submitted this 20th day of October, 2020.

                  Respectfully submitted,

                  JOHNSON LAW GROUP

                  /s/ Russell W. Lewis, IV
                  Russell W. Lewis, IV
                  Florida State Bar No. 0100755
                  Illinois State Bar No. 6297031
                  Kentucky State Bar No. 92325
                  Ohio State Bar No. 0089977
                  Pennsylvania State Bar No. 310295
                  Tennessee State Bar No. 024570
                  2925 Richmond Avenue, Suite 1700
                  Houston, Texas 77098
                  Phone: (713) 626-9336
                  Direct: (615) 200-1122
                  Fax: (713) 583-9460
                  Email: rlewis@johnsonlawgroup.com

                  /s/ Riley L. Burnett Jr.
                  Riley L. Burnett, Jr.
                  SDTX Bar No. 17010
                  BURNETT LAW FIRM
                  3737 Buffalo Speedway, 18th Floor
                  Houston, Texas 77089
                  Telephone: (832) 413-4410
                  Facsimile: (832) 900-2120
                  Email: RBurnett@rburnettlaw.com

                  /s/ David P. Matthews
                  David P. Matthews
                  SDTX Bar No. 11816
                  MATTHEWS & ASSOCIATES
                  2905 Sackett
                  Houston, TX 77098
                  Telephone: (713) 522-5250
                  Facsimile: (713) 535-7184
                  Email:
                  dmatthews@thematthewslawfirm.com